The opinion of the court was delivered by
Nicholls, C. J.
The defendant in this case having filed an exception of no canse of action to plaintiff’s demand, the allegations of the petition will have to be given in full.
*1185 Plaintiff avers that on or about June 22, 1892, William E. Hamilton, through his attorney, instituted in the District Court for Caddo -a suit entitled “The Shreveport Electric Railway and Motive Power Company vs. The City of Shreveport et al.,” by filing a petition verified by his oath made and subscribed to before Cal. D. Hicks, notary public of said parish, on June 21, 1892, whereon he obtained from the Hon. S. L. Taylor, judge of said court, on June 22, 1892, a writ of injunction. That in said petition and affidavit, said Hamilton represented himself to be the president of a pretended corporation, •styled in said petition The Shreveport Electric Railway and Motive Power Company, and therein falsely described as a corporation duly chartered, organized and existing under the laws of the State of Louisiana.
That in said petition, among others, the following allegations are made, viz.:
11 That said pretended company had been granted and vested with ■certain rights, privileges and franchises by an ordinance of the council of the city of Shreveport of July 28, 1891, and that such rights, privileges and franchises were held by ana vested in said company.
“ That in the exercise of such rights, said Hamilton, as president of •said company, employed a gang of laborers, and was with them engaged in constructing a railroad along Southern Avenue in said city, on June 20, 1892, when the police officers of said city, acting under the authority of the mayor and council of said city, arrested him and said laborers, and forcibly prevented them from continuing such work.
“ That said policemen, mayor and council, in their interference with the rights vested in said company by said ordinance, claim that said ordinance and all rights thereby vested were repealed by said council at its session on June 9, 1892.
“That such pretended repealing ordinance is an attempt to divest vested rights and is illegal, null and void. That Herman Herold, Oharles J. Randall, W. D. Scholfield, John C. Wimbish and Henry H. Youree, members of the council of said city, entered into a conspiracy with certain persons connected with and interested in the “ City Railroad Company,” a rival corporation, to pass said pretended repealing ordinance; that said conspiracy was conceived and executed solely in the interest of said City Railroad Company and *1186 its owners, and without any regard to the rights of said Hamilton’s-company or of the public.
“ That such conspiracy so concocted was kept a profound secret-from the mayor and from the remaining members of the City Council and from the public, and maintaining inviolably the injunction of secrecy imposed on them by said parties, whose interests alone they were to subserve. The said members of said council refused to-entertain a motion to postpone for investigation, made by a member not a party to said conspiracy, and-refused to hear the opinion or-follow the advice of the city attorney, .because they had aready taken the advice of the retained counsel of said City Railroad Company.
“ That said conspiracy and all the acts in pursuance thereof onthepart of the aforesaid members of the City Council were illegal,, wrongful, tortious, and a fraud on the rights of said Hamilton’s company.” All of which foregoing fully appeared from a certified copy of said petition annexed and made part hereof.
That said suit was dismissed by judgment of the District Court forCaddo on exceptions of defendants thereto, for reasons assigned in said judgment, which said exceptions and judgment therein are-made part hereof by reference.
That he is now and was at the date of the adoption of the ordinance of July 28, 1891, purporting and intending to grant certain, franchises fully set forth in the petition of said W. E. Hamilton in said suit, and that he voted as a member of the City Council against said ordinance; that he is now and was a member of the City Council on June 9, 1892, and as such voted for the ordinance adopted and. enacted on said date by said council repealing the ordinance granting certain rights to ‘1 The Shreveport Electric Railway and Motive-Power Company,” and that it was his right and his duty so to vote-for the reasons (among others) assigned by the Caddo District Court in the opinion and judgment dismissing said suit, No. 4001.
That the charges made against him and his fellow members of said council in the petition in said suit No. 4001, and verified by the oath-of said W. B. Hamilton, and the allegations of said petition with regard to himself and his fellow members, in so far as they affect the petitioner, are false, libelous, and slanderous, and calculated to injure and destroy the character and reputation of petitioner as a private citizen and public official, and his credit and repute as a business man, *1187 and that said charges and allegations constitute a charge of felony, and a criminal and infamous offence under the laws of the State of Louisiana; and that said W. E. Hamilton well knew when he published-said charges and verified them by his oath, that same were false,, libelous, and slanderous, and same were maliciously made and with, full advice. That said charges and allegations were so made and published by said W. E. Hamilton without cause, wantonly, maliciously, and with intent to injure petitioner; and that said charges as made and-published in said petition the said Hamilton has verbally reiterated, made and published at various and divers times before and after-the institution of said suit No. 4001, to citizens of Shreveport and to-others, with design to injure petitioner and destroy his character and credit. That the said petition of the said Hamilton in said suit No. 4001 shows on its face no cause of action against petitioner and the-other members of the Common Council named therein; and that he and said other members were made defendants in said suit wantonly, maliciously, and for the corrupc purposes of influencing thereby the-official action of petitioner and said other members in the interest of said Hamilton and a certain corporation, to-wit, “The Shreveport. Railway and Land Improvement Company,” wherein said Hamilton is a large stockholder, together with his father-in-law, Edward Jacobs, his brother-in-law, Walter B. Jacobs, and wherein said W. E. Hamilton, Edward Jacobs and W. B. Jacobs, and the First National Bank of Shreveport (whereof said E. Jacobs is president, said W. E. Hamilton is vice president, and said W. B. Jacobs is cashier), are large stockholders, and are otherwise largely interested, it being the purpose and intention of said Hamilton to destroy the-value and force the sale to said “Shreveport Railway and Land Improvement Company” of the property and franchise of the “Shreveport City Railway Company,” a rival corporation.
That since the judgment of the Caddo District Court dismissing-said suit No. 4001 the road and franchise of said City Railroad Company have been purchased by the Shreveport Railway and Land Improvement Company, or by the parties principally interested therein. That if it be true, as alleged in the said petition of said Hamilton, that the ordinance of June 23, 1891, therein set forth, vested rights and privileges in the “ Shreveport Electric Railway and Motive Power Co.,” then the repealing clause of - June 9, 1892, was unconstitutional, null and void, and such rights and privileges were- *1188 not thereby in any manner impaired or effected, and if said company held no vested rights under said ordinances of July 23, 1891, then said company has no rights nor cause of action as set forth in petition in said suit No. 4001. That under either supposition he and his fellow members of the City Council could not properly be made parties defendant to said suit No. 4001.
That there was no occasion to make him and his fellow members parties defendant in said suit or to make the charges therein made . against ihem; that the allegations and charges made in said petition and affidavit against him and his fellow members of the City Council were not pertinent to the issue or in any manner necessary for the protection of the rights therein alleged to exist. That said suit No. •4001 is not, and never has been, a real suit; that same was and is the fraudulent simulation of a suit; that there was no party plaintiff thereto, and that the pretended corporation styled therein “ The Shreveport Electric Railway and Motive Power Company” has no •existence, and has never existed, all of which said Wm. E. Hamilton well knew at the time he made said false, malicious and slanderous charges against petitioner and his said fellow members. That his reputation was in all respects good prior to the said charges aforesaid, falsely, wantonly and maliciously made and published by •said W. E. Hamilton; that the said charges so made and published have injured his reputation, have been detrimental to his standing •and social position in the community where he lives and elsewhere, have had a tendency to degrade him with his fellow men, have impaired his credit and injured his business, which is that of a cotton buyer and factor, and caused same to materially decline to his great financial loss; have subjected him to mortification and insult and have outraged his feelings to an extent which can not be sufficiently measured by money, but at least to the extent of §15,000; that he was entitled to exemplary and punitive damages Against said Hamilton to the amount of at least $10,000. That he was compelled to employ counsel to defend him in said suit No. 4001 at an expense to him of $150, for which amount, also, he should have judgment against said Hamilton. He prayed that Hamilton be •cited and that he have judgment against him for $25,140, interest and costs.
The District Oourt held that the exception of “ no cause of action ” was well taken, and dismissed the suit.
*1189 Plaintiff has appealed.
In his reasons for judgfnent the district judge said: “ There can be no doubt that the averments of the petition in Suit No. 4001 are libelous in their character. To charge a public official with having been a party to a fraudulent conspiracy, and to have been influenced in his official conduct by corrupt motives, is certainly a defamation likely to cause a breach of the peace and great injury to the sufferer. Such a charge, if published in a newspaper, would undoubtedly be actionable in damages if it were shown to be false and malicious.
“ But defendant contends that this charge was .made in the course' of judicial proceedings in good faith; that it arose upon a proper occasion and was pertinent to the issue, and is therefore protected as a privileged communication.”
“Under the Common Law'of England no action lies against an attorney or litigant for defamatory words spoken or written in a pleading in judicial proceedings, even though they were unnnecessary to support the case of the client and were uttered or published without any justification or excuse, and from personal ill will toward the party defamed arising from some previously existing cause, and are irrelevant to every question of fact in issue before the court. It seems, then, that under the English law the mere fact that the defamatory language was used in a judicial proceeding is an absolute protection, regardless of all other considerations.”
“Plaintiff’s counsel contends that this law has never been adopted in Louisiana; that privileged communications in judicial proceedings are unknown to our law, and that Art. 2315 of the Civil Code furnishes the true and only rule for determining the right of action in all cases — libel and slander included — where damages are claimed for torts, even though the defamatory -matter be published in a judicial proceeding. Many authorities are cited to support the-position, notably that of Miller vs. Holstein, 16 La. 389.
“ I have examined these proceedings and they undoubtedly show that the English law of absolute protection does not prevail here, and that the foundation and measure of liability for a libel uttered in a judicial proceeding are found in Article 2315 of the Code. But I do not understand them as holding that no sort of privileged communications is known to our law.”
The learned judge then proceeded to cite and quote a number of decisions in which the defendants in suits brought against them *1190 for damages had been protected from liability by reason of the acts ■complained haying occurred in the course of judicial proceedings, and from those decisions he reached the conclusion that in some cases an .absolute exemption from liability existed and that the present case was one of that character.
There is a great difference between an absolute exemption from liability for damages under a given state of facts proven and an absolute exemption from liability to a suit for the purpose of testing whether such a state of facts exists as would convey with it such protection from damages. There is a great difference between the situation of parties at the end of a lawsuit, and after evidence adduced, and that of parties at the beginning of a lawsuit standing on pleadings. There can be no doubt that the fact that an act complained of occurred in judicial proceedings may have a great bearing and influence upon both the burden and sufficiency of proof and the final result on a question of a liability to damages for that act. ■Such a fact being shown with its attendant circumstances may sometimes afford partial protection — sometimes afford absolute protection, but it may also frequently intensify and aggravate a wrong.
The determination of such questions depends almost necessarily upon facts resting still in pais, which can only be positively and finally ascertained through the instrumentality of a suit. Whilst it may be true, that given a particular state of facts, legal protection from liability would follow as a matter of law, it is none the less true, that the facts themselves on which exemption is based are open to inquiry and to judicial scrutiny. Any other doctrine would •convert the courts of the country into instrumentalities for injustice and into engines of oppression.
Nothing in the Guar denial case, which was one tried on its merits -and which turned upon the burden of proof, is out of line with the views herein expressed. In that case this court, speaking of privileged communications, said: “In privileged communications the party is protected from the infliction of damages unless the occasion •was used as a means of inflicting a wilful and malicious injury upon the plaintiff,” and referring to protection resulting from judicial pro•ceedings, deelai’ed it “extended to those who were in the honest pursuit of private right.” It was never once intimated that the courts of our State were places from which, as from places of secure .refuge,|they could with impunity perpetrate wrong. 42 An. 955.
*1191 We have examined plaintiff’s p'eadings very carefully. They are both full and precise. If in their consideration we strike out and eliminate the question of “privilege” it must be conceded plaintiff’s petition discloses a cause of action.
If we replace that question we find that plaintiff has specifically affirmed the non-existence of the conditions upon which the right of exemption is dependent. He has a right to go to trial upon that issue as one of fact to be ascertained by evidence. For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, the case reinstated, and it remanded for further proceedings according to law.