NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12226

CRISTINA BARBUTO  vs.  ADVANTAGE SALES AND MARKETING, LLC,
& another.[1]


Suffolk.     March 9, 2017. - July 17, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Marijuana.  Anti-Discrimination Law, Handicap, Employee,
     Termination of employment.  Employment, Discrimination,
     Termination.  Practice, Civil, Motion to dismiss.



     Civil action commenced in the Superior Court Department on
September 4, 2015.

     A motion to dismiss was heard by Robert N. Tochka, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Matthew J. Fogelman (Adam D. Fine also present) for the
plaintiff.
     Michael K. Clarkson (M. Tae Phillips also present) for the
defendants.
     The following submitted briefs for amici curiae:
     Elizabeth Milito, of the District of Columbia, & Gregory D.
Cote for NFIB Small Business Legal Center.
     Reid M. Wakefield & Constance M. McGrane for Massachusetts
Commission Against Discrimination.

-----

[1] Joanne Meredith Villaruz.

David A. Russcol & Chetan Tiwari for Massachusetts Employment Lawyers Association & others.

GANTS, C.J.  In 2012, Massachusetts voters approved the initiative petition entitled, "An Act for the humanitarian medical use of marijuana," St. 2012, c. 369 (medical marijuana act or act), whose stated purpose is "that there should be no punishment under state law for qualifying patients . . . for the medical use of marijuana."  Id. at § 1.  The issue on appeal is whether a qualifying patient who has been terminated from her employment because she tested positive for marijuana as a result of her lawful medical use of marijuana has a civil remedy against her employer.  We conclude that the plaintiff may seek a remedy through claims of handicap discrimination in violation of G. L. c. 151B, and therefore reverse the dismissal of the plaintiff's discrimination claims.  We also conclude that there is no implied statutory private cause of action under the medical marijuana act and that the plaintiff has failed to state a claim for wrongful termination in violation of public policy, and therefore affirm the dismissal of those claims.[2]

---

[2] We acknowledge the amicus briefs submitted by the Massachusetts Commission Against Discrimination; the National Federation of Independent Business Small Business Legal Center; and the Massachusetts Employment Lawyers Association, the American Civil Liberties Union of Massachusetts, GLBTQ Legal Advocates & Defenders, Mental Health Legal Advisors Committee, Union of Minority Neighborhoods, the Jewish Alliance for Law and Social Action, and Health Law Advocates.

Background.  "We review the allowance of a motion to dismiss de novo."  Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011).  In deciding whether a count in the complaint states a claim under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), we accept as true the allegations in the complaint, draw every reasonable inference in favor of the plaintiff, and determine whether the factual allegations plausibly suggest an entitlement to relief under the law.  Id.

As alleged in the complaint, the plaintiff, Cristina Barbuto, was offered an entry-level position with defendant Advantage Sales and Marketing (ASM) in the late summer of 2014, and accepted the offer.  An ASM representative later left a message for Barbuto stating that she was required to take a mandatory drug test.  Barbuto told the ASM employee who would be her supervisor that she would test positive for marijuana.  Barbuto explained that she suffers from Crohn's disease, a debilitating gastrointestinal condition; that her physician had provided her with a written certification that allowed her to use marijuana for medicinal purposes; and that, as a result, she was a qualifying medical marijuana patient under Massachusetts law.  She added that she did not use marijuana daily and would not consume it before work or at work.

Typically, Barbuto uses marijuana in small quantities at her home, usually in the evening, two or three times per week.

As a result of her Crohn's disease, and her irritable bowel syndrome, she has "little or no appetite," and finds it difficult to maintain a healthy weight. After she started to use marijuana for medicinal purposes, she gained fifteen pounds and has been able to maintain a healthy weight.

The supervisor told Barbuto that her medicinal use of marijuana "should not be a problem," but that he would confirm this with others at ASM. He later telephoned her and confirmed that her lawful medical use of marijuana would not be an issue with the company.

On September 5, 2014, Barbuto submitted a urine sample for the mandatory drug test. On September 11, she went to an ASM training program, where she was given a uniform and assigned a supermarket location where she would promote the products of ASM's customers. She completed her first day of work the next day. She did not use marijuana at the workplace and did not report to work in an intoxicated state. That evening, defendant Joanna Meredith Villaruz, ASM's Human Resources representative, informed Barbuto that she was terminated for testing positive for marijuana. Villaruz told Barbuto that ASM did not care if Barbuto used marijuana to treat her medical condition because "we follow federal law, not state law."

Barbuto filed a verified charge of discrimination against ASM and Villaruz with the Massachusetts Commission Against

Discrimination (MCAD), which she later withdrew in order to file a complaint in the Superior Court. The complaint included six claims: (1) handicap discrimination, in violation of G. L. c. 151B, § 4 (16); (2) interference with her right to be protected from handicap discrimination, in violation of G. L. c. 151B, § 4 (4A); (3) aiding and abetting ASM in committing handicap discrimination, in violation of G. L. c. 151B, § 4 (5); (4) invasion of privacy, in violation of G. L. c. 214, § 1B; (5) denial of the "right or privilege" to use marijuana lawfully as a registered patient to treat a debilitating medical condition, in violation of the medical marijuana act; and (6) violation of public policy by terminating the plaintiff for lawfully using marijuana for medicinal purposes. The second and third claims were brought against Villaruz alone; the rest were brought against both ASM and Villaruz. After unsuccessfully attempting to remove the case to United States District Court, the defendants filed a motion to dismiss the complaint in the Superior Court.

The judge allowed the motion as to all counts except the invasion of privacy claim. At the request of the plaintiff, the judge entered a separate and final judgment on the dismissed claims, and stayed the invasion of the privacy claim pending appeal. The plaintiff filed a notice of appeal regarding the

dismissed claims, and we allowed the plaintiff's application for direct appellate review.

Discussion. 1. Massachusetts medical marijuana act. Under the medical marijuana act, a "qualifying patient" is defined as "a person who has been diagnosed by a licensed physician as having a debilitating medical condition"; Crohn's disease is expressly included within the definition of a "debilitating medical condition."  St. 2012, c. 369, §§ 2 (K), (C).  The act protects a qualifying patient from "arrest or prosecution, or civil penalty, for the medical use of marijuana" provided the patient "(a) [p]ossesses no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply; and (b) [p]resents his or her registration card to any law enforcement official who questions the patient . . . regarding use of marijuana."  St. 2012, c. 369, § 4.  The act also provides, "Any person meeting the requirements under this law shall not be penalized under Massachusetts law in any manner, or denied any right or privilege, for such actions."  Id.

Like Massachusetts, nearly ninety per cent of States, as well as Puerto Rico and the District of Columbia, allow the limited possession of marijuana for medical treatment.  See Congressional Research Service, The Marijuana Policy Gap and the Path Forward 7 (Mar. 10, 2017).  See also National Conference of

State Legislatures, State Medical Marijuana Laws (2017) ,

http://www.ncsl.org/research/health/state-medical-marijuana-

laws.aspx [https://perma.cc/9VYY-YMP8] (reporting that twenty-

nine States, the District of Columbia, Puerto Rico, and Guam

allow for "comprehensive public medical marijuana and cannabis

programs," while seventeen other States allow use of "'low THC,

high cannabidiol . . . products' for medical reasons in limited

situations or as a legal defense").[3]  Yet under Federal law,

marijuana continues to be a Schedule I controlled substance

under the Controlled Substances Act, 21 U.S.C. § 812(b)(1), (c)

(2012), whose possession is a crime, regardless of whether it is

prescribed by a physician for medical use.  See Gonzales v.

Raich, 545 U.S. 1, 27 (2005) ("The [Controlled Substances Act]

designates marijuana as contraband for any purpose; in fact, by

characterizing marijuana as a Schedule I drug, Congress

expressly found that the drug has no acceptable medical uses"

[emphasis in original]). Consequently, a qualifying patient in

Massachusetts who has been lawfully prescribed marijuana remains

potentially subject to Federal criminal prosecution for

possessing the marijuana prescribed.  It is against this unusual

---

[3] In November, 2016, Massachusetts voters approved another initiative petition that legalized the recreational possession and use of marijuana by persons over twenty-one years of age. See St. 2016, c. 334.  This initiative is irrelevant to this appeal, because the plaintiff's possession and use of marijuana for medical treatment was already lawful at the time her employment was terminated for its use.

backdrop that we review the judge's dismissal of every claim in the complaint except for the privacy claim.

2. <u>Handicap discrimination</u>.  Under G. L. c. 151B, § 4 (16), it is an "unlawful practice . . . [f]or any employer . . . to dismiss from employment or refuse to hire . . . , because of [her] handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business."[4]  "In interpreting the meaning of these provisions, we give 'substantial deference' to the guidelines interpreting G. L. c. 151B, promulgated by the MCAD, although we recognize that the guidelines do not carry the force of law." <u>Gannon</u> v. <u>Boston</u>, 476 Mass. 786, 792 (2017), citing <u>Dahill</u> v. <u>Police Dep't of Boston</u>, 434 Mass. 233, 239 (2001).  "We remain mindful that the Legislature instructed that G. L. c. 151B

---

[4] The law defines the term "handicap" to mean "(<u>a</u>) a physical or mental impairment which substantially limits one or more major life activities of a person; (<u>b</u>) a record of having such impairment; or (<u>c</u>) being regarded as having such impairment."  G. L. c. 151B, § 1 (17).  "[H]andicapped person" means "any person who has a handicap."  G. L. c. 151B, § 1 (19). A "qualified handicapped person" is "a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to the handicap."  G. L. c. 151B, § 1 (16).

'shall be construed liberally for the accomplishment of its purposes.'" Gannon, supra at 793, quoting G. L. c. 151B, § 9.

The plaintiff alleges that she is a "handicapped person" because she suffers from Crohn's disease and that she is a "qualified handicapped person" because she is capable of performing the essential functions of her job with a reasonable accommodation to her handicap; that is, with a waiver of ASM's policy barring anyone from employment who tests positive for marijuana so that she may continue to use medical marijuana as prescribed by her physician.[5] She adequately states a claim for handicap discrimination in violation of § 4 (16) if the allegations in her complaint, accepted as true, suffice to make a facial showing that she is a "qualified handicapped person" who was terminated because of her handicap. See Massachusetts Commission Against Discrimination, Guidelines: Employment Discrimination on the Basis of Handicap, Chapter 151B, § IX.A.3 (1998) (MCAD Guidelines).

---

[5] "Reasonable accommodation" is not a defined term in G. L. c. 151B, § 1, but it is defined in guidelines regarding handicap discrimination issued by the Massachusetts Commission Against Discrimination: "A 'reasonable accommodation' is any adjustment or modification to a job (or the way a job is done), employment practice, or work environment that makes it possible for a handicapped individual to perform the essential functions of the position involved and to enjoy equal terms, conditions and benefits of employment" (footnote omitted). Massachusetts Commission Against Discrimination, Guidelines: Employment Discrimination on the Basis of Handicap Chapter 151B § II.C (1998) (MCAD Guidelines).

Where Crohn's disease is characterized as a "debilitating medical condition" under the medical marijuana act, see St. 2012, c. 369, § 2 (C), and where the complaint alleges that, as a result of this condition, combined with irritable bowel syndrome, the plaintiff has "little or no appetite" and has difficulty maintaining a healthy weight, we conclude that she has adequately alleged that she has a physical impairment that substantially limits one or more major life activities and therefore is a "handicapped person" as defined in § 1 (19).[6]

Where a plaintiff is handicapped and where she suffered an adverse employment action even though she was capable of performing the essential functions of her position with some form of accommodation, the plaintiff adequately alleges a claim of handicap discrimination if the accommodation that she alleges is necessary is facially reasonable. See Godfrey v. Globe Newspaper Co., 457 Mass. 113, 120 (2010). Because a reasonable accommodation claim may arise in a wide variety of contexts, courts are reluctant to set "hard and fast rules" as to when an

---

[6] Barbuto's complaint does not specify which "major life activity" her Crohn's disease impairs. However, accepting the facts alleged in the complaint as true, it appears that the disease significantly impairs her ability to work, which is a major life activity. See G. L. c. 151B, § 1 (20); New Bedford v. Massachusetts Comm'n Against Discrimination, 440 Mass. 450, 464-465 (2003). We also note that eating is widely recognized as a major life activity under Federal antidiscrimination case law. See Kapche v. Holder, 677 F.3d 454, 461 & n.6 (D.C. Cir. 2012), and cases cited.

accommodation is facially reasonable. See Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 n.5 (1st Cir. 2001). Generally speaking, however, a plaintiff must at least show that the accommodation is "feasible for the employer under the circumstances." Id. at 259.

The defendants argue that Barbuto has failed to state a claim of handicap discrimination for two reasons. First, they contend that she has not adequately alleged that she is a "qualified handicapped person" because the only accommodation she sought -- her continued use of medical marijuana -- is a Federal crime, and therefore is facially unreasonable. See Garcia v. Tractor Supply Co., 154 F. Supp. 3d 1225, 1229 (D.N.M. 2016) ("medical marijuana is not an accommodation that must be provided for by the employer"); Ross v. RagingWire Telecomm., Inc., 42 Cal. 4th 920, 926 (2008) (California's statute prohibiting handicap discrimination "does not require employees to accommodate the use of illegal drugs"). Second, they contend that, even if she were a "qualified handicapped person," she was terminated because she failed a drug test that all employees are required to pass, not because of her handicap.

As to the defendants' first argument, where an employee is handicapped because she suffers from a debilitating medical condition that can be alleviated or managed with medication, one generally would expect an employer not to interfere with the

employee taking such medication, or to terminate her because she took it. If the employer, however, had a drug policy prohibiting the use of such medication, even where lawfully prescribed by a physician, the employer would have a duty to engage in an interactive process with the employee to determine whether there were equally effective medical alternatives to the prescribed medication whose use would not be in violation of its policy. See Godfrey, 457 Mass. at 120 ("If the accommodation proposed by the employee appears unduly onerous, the employer has an obligation to work with the employee to determine whether another accommodation is possible"). See also Massachusetts Bay Transp. Auth. v. Massachusetts Comm'n Against Discrimination, 450 Mass. 327, 342 n.17 (2008) (when handicapped employee requests accommodation, "employer is obligated to participate in the interactive process of determining one"); MCAD Guidelines, § VII.C (once handicapped employee notifies employer of need for accommodation to perform essential functions of job, "the employer should initiate an informal interactive process" with employee to "identify the precise limitation resulting from the handicap and potential reasonable accommodations that could overcome those limitations").

Where no equally effective alternative exists, the employer bears the burden of proving that the employee's use of the medication would cause an undue hardship to the employer's

business in order to justify the employer's refusal to make an exception to the drug policy reasonably to accommodate the medical needs of the handicapped employee.  See Godfrey, 457 Mass. at 120, quoting Cox v. New England Tel. & Tel. Co., 414 Mass. 375, 386 n.3 (1993) ("Once an employee 'make[s] at least a facial showing that reasonable accommodation is possible,' the burden of proof [of both production and persuasion] shifts to the employer to establish that a suggested accommodation would impose an undue hardship").  Because the burden of proving undue hardship rests with the employer, where an employee brings a handicap discrimination claim following her dismissal for the use of her prescribed medication, her complaint will state a claim for relief that will survive a motion to dismiss where it adequately alleges that she is a "qualified handicapped person" because she could have competently performed her job with the medication, and that allowing her to use the medication was at least facially a reasonable accommodation.

Here, the defendants contend that, because the prescribed medication is marijuana, which is illegal to possess under Federal law, an accommodation that would permit the plaintiff to continue to be treated with medical marijuana is per se unreasonable.  They also contend that, because such an accommodation is facially unreasonable, it owed the plaintiff no obligation to participate in the interactive process to identify

a reasonable accommodation before they terminated her employment.  We are not persuaded by either argument.

Under Massachusetts law, as a result of the act, the use and possession of medically prescribed marijuana by a qualifying patient is as lawful as the use and possession of any other prescribed medication.  Where, in the opinion of the employee's physician, medical marijuana is the most effective medication for the employee's debilitating medical condition, and where any alternative medication whose use would be permitted by the employer's drug policy would be less effective, an exception to an employer's drug policy to permit its use is a facially reasonable accommodation.  A qualified handicapped employee has a right under G. L. c. 151B, § 4 (16), not to be fired because of her handicap, and that right includes the right to require an employer to make a reasonable accommodation for her handicap to enable her to perform the essential functions of her job.

Our conclusion finds support in the marijuana act itself, which declares that patients shall not be denied "any right or privilege" on the basis of their medical marijuana use.  St. 2012, c. 369, § 4.  A handicapped employee in Massachusetts has a statutory "right or privilege" to reasonable accommodation under G. L. c. 151B, § 4.  If an employer's tolerance of an employee's use of medical marijuana were a facially unreasonable accommodation, the employee effectively would be denied this

"right or privilege" solely because of the patient's use of medical marijuana.[7]

The act also makes clear that it does not require "any accommodation of any on-site medical use of marijuana in any place of employment." St. 2012, c. 369, § 7 (D). This limitation implicitly recognizes that the off-site medical use of marijuana might be a permissible "accommodation," which is a term of art specific to the law of handicap discrimination.

---

[7] The language of the Massachusetts medical marijuana act distinguishes this case from a California Supreme Court decision that denied an employee's challenge under the State's handicap discrimination law to a termination based on the employee's use of medical marijuana. The California medical marijuana law at issue in Ross v. RagingWire Telecomm. Inc., 42 Cal. 4th 920, 927-928 (2008), did not contain language protecting medical marijuana users from the denial of any right or privilege.

In other published cases where State Supreme Courts have rejected employees' claims for relief from their termination of employment because of their use of medical marijuana, the employees did not bring handicap discrimination claims. In Coats v. Dish Network, LLC, 350 P.3d 849, 851 (Colo. 2015), the plaintiff brought a wrongful termination claim, alleging that his termination was in violation of a State statute that barred an employer from discharging an employee based on the employee's participation in "lawful activities" off-site during nonworking hours. The Supreme Court of Colorado affirmed the dismissal of the claim, concluding that the Legislature did not intend the statute to apply to an activity, such as the possession of marijuana, that was unlawful under Federal law. Id. at 853. In Roe v. Teletech Customer Care Mgt. (Colorado) LLC, 171 Wash. 2d 736, 760 (2011), the Washington Supreme Court affirmed the allowance of summary judgment in favor of the employer on the plaintiff's wrongful termination claims, holding that the State's medical marijuana law did not create a private right of action and did not proclaim a public policy prohibiting the discharge of an employee for medical marijuana use.

The fact that the employee's possession of medical marijuana is in violation of Federal law does not make it per se unreasonable as an accommodation.  The only person at risk of Federal criminal prosecution for her possession of medical marijuana is the employee.  An employer would not be in joint possession of medical marijuana or aid and abet its possession simply by permitting an employee to continue his or her off-site use.

Nor are we convinced that, as a matter of public policy, we should declare such an accommodation to be per se unreasonable solely out of respect for the Federal law prohibiting the possession of marijuana even where lawfully prescribed by a physician.  Since 1970 when Congress determined that marijuana was a Schedule I controlled substance that, in contrast with a Schedule II, III, IV, or V controlled substance, "has no currently accepted medical use in treatment in the United States," nearly ninety per cent of the States have enacted laws regarding medical marijuana that reflect their determination that marijuana, where lawfully prescribed by a physician, has a currently accepted medical use in treatment.[8]  See 21 U.S.C. § 812(b)(1)(B).  To declare an accommodation for medical

_____

[8] See National Organization for Reform of Marijuana Laws (NORML) v. Bell, 488 F. Supp. 123, 134-137 (D.D.C. 1980) (discussing legislative history of Controlled Substances Act); id. at 135 (in 1970 "few reliable scientific studies existed that could give accurate information to the legislators").

marijuana to be per se unreasonable out of respect for Federal law would not be respectful of the recognition of Massachusetts voters, shared by the legislatures or voters in the vast majority of States, that marijuana has an accepted medical use for some patients suffering from debilitating medical conditions.  Cf. Commonwealth v. Craan, 469 Mass. 24, 35 (2014) ("the fact that [marijuana possession] is technically subject to a Federal prohibition does not provide [the Commonwealth] an independent justification for a warrantless search").[9]

In addition, even if the accommodation of the use of medical marijuana were facially unreasonable (which it is not), the employer here still owed the plaintiff an obligation under G. L. c. 151B, § 4 (16), before it terminated her employment, to participate in the interactive process to explore with her whether there was an alternative, equally effective medication she could use that was not prohibited by the employer's drug policy.  This failure to explore a reasonable accommodation alone is sufficient to support a claim of handicap discrimination provided the plaintiff proves that a reasonable

---

[9] The defendants in this case have waived the argument that Federal preemption requires the conclusion that an employee's use of medical marijuana is facially unreasonable as an accommodation.  We note that the Oregon Supreme Court rested its decision that an employee's use of medical marijuana was not a reasonable accommodation under the State's disability act on this ground.  Emerald Steel Fabricators, Inc. v. Bureau of Labor & Indus., 348 Or. 159, 189-190 (2010).

accommodation existed that would have enabled her to be a "qualified handicapped person."  See Spurling v. C & M Fine Pack, Inc., 739 F.3d 1055, 1061-1062 (7th Cir. 2014) (employer found liable for disability discrimination where it "turn[ed] a blind eye" to plaintiff's sleep impairment and terminated her without interactive dialogue where she could have demonstrated through such dialogue availability of narcolepsy medication that would have enabled her to perform essential functions of job).

As to the defendants' second argument, where a handicapped employee needs medication to alleviate or manage the medical condition that renders her handicapped, and the employer fires her because company policy prohibits the use of this medication, the law does not ignore the fact that the policy resulted in a person being denied employment because of her handicap.  By the defendants' logic, a company that barred the use of insulin by its employees in accordance with a company policy would not be discriminating against diabetics because of their handicap, but would simply be implementing a company policy prohibiting the use of a medication.  Where, as here, the company's policy prohibiting any use of marijuana is applied against a handicapped employee who is being treated with marijuana by a licensed physician for her medical condition, the termination of the employee for violating that policy effectively denies a handicapped employee the opportunity of a reasonable

accommodation, and therefore is appropriately recognized as handicap discrimination.  Cf. School Comm. of Braintree v. Massachusetts Comm'n Against Discrimination, 377 Mass. 424, 425 (1979) (employment policy that prohibited teachers from using accrued sick leave for pregnancy-related disabilities that occur in extended maternity leaves was gender discrimination).

Our conclusion that an employee's use of medical marijuana under these circumstances is not facially unreasonable as an accommodation for her handicap means that the dismissal of the counts alleging handicap discrimination must be reversed.  But it does not necessarily mean that the employee will prevail in proving handicap discrimination.  The defendants at summary judgment or trial may offer evidence to meet their burden to show that the plaintiff's use of medical marijuana is not a reasonable accommodation because it would impose an undue hardship on the defendants' business.  See Godfrey, 457 Mass. at 120.  See also G. L. c. § 4 (16) (listing factors considered in determining whether accommodation would create undue hardship).  For instance, an employer might prove that the continued use of medical marijuana would impair the employee's performance of her work or pose an "unacceptably significant" safety risk to the public, the employee, or her fellow employees.  See Gannon, 476 Mass. at 800.

Alternatively, an undue hardship might be shown if the employer can prove that the use of marijuana by an employee would violate an employer's contractual or statutory obligation, and thereby jeopardize its ability to perform its business. We recognize that transportation employers are subject to regulations promulgated by the United States Department of Transportation that prohibit any safety-sensitive employee subject to drug testing under the department's drug testing regulations from using marijuana. See 49 CFR §§ 40.1(b), 40.11(a) (2001). See also DOT 'Medical Marijuana' Notice, U.S. Dept. of Transp. (Updated: June 20, 2017), https://www.transportation.gov/odapc/medical-marijuana-notice [https://perma.cc/FY24-SEMZ]. In addition, we recognize that Federal government contractors and the recipients of Federal grants are obligated to comply with the Drug Free Workplace Act, 41 U.S.C. §§ 8102(a), 8103(a) (2012), which requires them to make "a good faith effort . . . to maintain a drug-free workplace," and prohibits any employee from using a controlled substance in the workplace.[10]

Whether the employer met its burden of proving that the requested accommodation would impose an undue hardship on the

---

[10] As noted earlier, we recognize that the Massachusetts medical marijuana act does not require any employer to permit on-site marijuana use as an accommodation to an employee. See St. 2012, c. 369, § 7 (D).

employer's business is an issue that may be resolved through a motion for summary judgment or at trial; it is not appropriately addressed through a motion to dismiss.  Because the plaintiff's continued use of medical marijuana under these circumstances is not facially unreasonable as an accommodation for her handicap and because the plaintiff has adequately alleged that ASM failed to participate in an interactive process with the plaintiff to determine whether there was a reasonable accommodation for her handicap, we reverse the dismissal of count 1, alleging handicap discrimination.  We also reverse the dismissal of counts 2 and 3 against Villaruz, which allege that she aided and abetted ASM's handicap discrimination and interfered with the plaintiff's exercise of her right to be free from handicap discrimination.

3.  <u>Implied private cause of action under the medical marijuana act</u>.  The plaintiff alleges in count 4 of her complaint that her termination was in violation of the medical marijuana act, which suggests that she claims she has a private cause of action under the act against an employer who terminates her employment for the lawful use of medical marijuana.  When the voters approved the act through the initiative petition, two New England States, Rhode Island and Maine, already had enacted comparable statutes that expressly included provisions prohibiting employers from taking adverse employment action against an employee for his or her lawful use of medical

marijuana. See R.I. Gen. Laws. § 21-28.6-4 (b) (2006 & Supp. 2017) ("No school, employer or landlord may refuse to enroll, employ or lease to or otherwise penalize a person solely for his or her status as a [registered qualifying patient]"); Me. Rev. Stat. Ann. tit. 22, § 2423-E (West 1964 & Supp. 2016) ("A school, employer or landlord may not refuse to enroll or employ or lease to or otherwise penalize a person for that person's status as a qualifying patient . . . unless failing to do so would put the school, employer or landlord in violation of [F]ederal law or cause it to lose a [F]ederal contract or funding"). The Massachusetts act did not include such language. Therefore, we consider whether, despite the absence of such language, a private right of action of an employee who was terminated for her lawful use of medical marijuana exists under the act by implication.

Legislative intent is "the determinative factor in deciding whether a private cause of action can be implied from a statute." Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 543 (1998), and cases cited. "[W]e have generally been reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." Id. at 544. Where a statute was enacted by the voters through an initiative petition, "it is to the wishes of the people, not the Legislature, that we must look." Bates

v. Director of Office of Campaign & Political Fin., 436 Mass. 144, 173 (2002).

In considering whether there is any such indication from the voters, we look to the closest equivalent to legislative history, which is the Information for Voters guide that is prepared by the Secretary of the Commonwealth and sent to each registered voter before the election.[11]  See Roe v. Teletech Customer Care Mgt. (Colorado) LLC, 171 Wash. 2d 736, 747 (2011) ("If there is ambiguity in an initiative, the court may look to extrinsic evidence of the voters' intent such as statements in the voters' pamphlet").  There is no indication from the guide that the voters understood they were creating a private right of action through passage of the initiative; the guide is silent

---

[11] The voter information booklet prepared by the Secretary of the Commonwealth (Secretary) "is a single, comprehensive collection of the information that is officially available to voters in advance of the election.  For each ballot question, the guide contains (i) the title given to the question by the Attorney General and the Secretary; (ii) the Attorney General's summary in full; (iii) the two one-sentence statements prepared by the Attorney General and the Secretary describing the effect of a 'yes' and a 'no' vote; (iv) a statement prepared by the Secretary of Administration and Finance describing the fiscal impact of the proposed act; (v) any legislative committee majority reports, together with the names of the majority and minority members of the committees that may have considered the proposed act; (vi) a statement of votes of the General Court on the proposed act, if any; (vii) arguments, not exceeding 150 words each, for and against the proposed act submitted by its proponents and opponents; and (viii) the full text of the proposed act itself." Hensley v. Attorney Gen., 474 Mass. 651, 660 n.14 (2016), citing art. 48, General Provisions, IV, of the Amendments to the Massachusetts Constitution, as amended by art. 108 of the Amendments; and G. L. c. 54, §§ 53, 54.

with respect to adverse employment action arising from an employee's use of medical marijuana.

We also consider whether the absence of a private cause of action would render the statute ineffective, and frustrate the voters' purpose in approving the initiative. See Bates, 436 Mass. at 173-174, quoting Boston Elevated Ry. v. Commonwealth, 310 Mass. 528, 548 (1942) ("We will not impute to the voters who enacted the clean elections law an 'intention to pass an ineffective statute'"). Here, where a comparable cause of action already exists under our law prohibiting handicap discrimination, a separate, implied private right of action is not necessary to protect a patient using medical marijuana from being unjustly terminated for its use. The Legislature's provision of a separate remedy, especially, as here, a separate civil remedy, "weighs heavily against recognizing" an implied private right of action in a statute. See Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 373 (2008). Cf. Loffredo, 426 Mass. at 547, quoting Transamerica Mtge. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it").

In addition, as noted earlier, the drafters of the act appear to have recognized the existence of a cause of action for handicap discrimination by specifically prohibiting "on-site"

medical marijuana use as an "accommodation." St. 2012, c. 369, § 7 (D). The drafters also barred the denial of a "right or privilege" for marijuana use, which suggests a preexisting right or privilege, not a right created by the act. Id. at § 4.

We interpret statutes, where we can, to be in harmony with each other. See Carleton v. Commonwealth, 447 Mass. 791, 809 (2006); Charland v. Muzi Motors, Inc., 417 Mass. 580, 582-583 (1994). Recognizing an implied private right of action under the medical marijuana act for an employee could conflict with the employee's right of action under our antidiscrimination law. G. L. c. 151B. In contrast to our antidiscrimination law, which sets forth limitations such as the employer's undue hardship defense, G. L. c. 151B, § 3 (16), the medical marijuana act provides no guidance as to what the appropriate contours of the implied right of action would be. We will not imply a separate private cause of action for aggrieved employees under the medical marijuana act, where such employees are already provided a remedy under our discrimination law, and where doing so would create potential confusion.

4. Wrongful termination in violation of public policy. The plaintiff alleges in count 6 of her complaint a claim of wrongful termination in violation of public policy, where the public policy is the protection of an employee's right to use marijuana for medicinal purposes. "As an exception to the

general rule that an employer may terminate an at-will employee at any time with or without cause, we have recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy." King v. Driscoll, 418 Mass. 576, 582 (1994), S.C., 424 Mass. 1 (1996). We "consistently [have] interpreted the public policy exception narrowly, reasoning that to do otherwise would 'convert the general rule . . . into a rule that requires just cause to terminate an at-will employee.'" Id., quoting Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 150 (1989). Because a competent employee has a cause of action for handicap discrimination where she is unfairly terminated for her use of medical marijuana to treat a debilitating medical condition, we see no need and no reason to recognize a separate cause of action for wrongful termination based on the violation of public policy arising from such handicap discrimination. We also note, as we did in rejecting an implied private cause of action under the act, that recognizing such a wrongful termination claim would invite confusion as to whether its parameters mirror those for handicap discrimination.

Conclusion. For the reasons stated above, we reverse the judge's allowance of the motion to dismiss the plaintiff's claim for handicap discrimination and the related claims under G. L.

c. 151B, and affirm the allowance of the motion as to the counts claiming an implied private cause of action under the act and wrongful termination in violation of public policy.  We remand the case to the Superior Court for further proceedings consistent with this opinion.

<u>So ordered</u>.